**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

LINDSI M. J. [1],

      Plaintiff,

         v.                                 CASE NO. 1:24-CV-408-SJF

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY[2],,

      Defendant.

**OPINION and ORDER**

Plaintiff Lindsi M. J. ("Ms. J") seeks judicial review of the Social Security

Commissioner's decisions denying Ms. J's application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act ("Act"). This Court may enter

a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C.

§ 405(g). [DE 14]. For the reasons discussed below, the Court **AFFIRMS** the decision of

the Commissioner of the Social Security Administration ("SSA").

    **I.**      **OVERVIEW OF THE CASE**

Ms. J filed her application for supplemental security income ("SSI") on April 28,

2022, alleging disability beginning June 8, 2019. (Administrative Record[3] 17, 188-93;

hereinafter "AR"). Her claims were denied initially, on reconsideration, and after a

hearing before an administrative law judge ("ALJ"). (*Id.*). The ALJ issued her

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.
[3] Administrative record page numbers are noted in the bottom right corner of each page.

unfavorable decision on November 24, 2023. (AR 17-30). Ms. J then requested further review of the ALJ's decision, and the Appeals Council denied this request on August 1, 2024. (AR 1-3). Thus, the ALJ's decisions became the final decisions of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. J filed suit in this Court on September 26, 2024. This Court has jurisdiction under 42 U.S.C. § 405(g).

## II.    APPLICABLE STANDARDS

### A.  Disability Standard

To qualify for SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 416.910. A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 1382c(a)(3)(D); 1382c(a)(3)(A); 423(d)(3). A claimant must establish that her physical or mental impairments "are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner applies this statutory standard by employing a five-step sequential analysis. 20 C.F.R. § 416.920(a)(4). The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000); *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) ("At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations.").

### B. Standard of Review

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but

3

may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must

confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.    DISCUSSION

#### A.  Summary of the ALJ's Decisions Denying Benefits

Ms. J's telephonic hearing before the ALJ took place on October 5, 2023. (AR 37). Ms. J was represented by an attorney. (AR 37-38). On November 24, 2023, the ALJ issued her written decision denying Ms. J's application, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. §§ 416.920; 416.965, 416.971, 416.974. (AR 30).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. J had not engaged in substantial gainful activity from the date of her application through the dates of the ALJ's decision. 20 C.F.R. §§ 416.920(b); 416.971 et seq. (AR 18).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 416.920(c). The ALJ concluded that Ms. J suffered from the following severe impairments: obesity, psoriasis, psoriatic arthropathy, asthma, hypertension, degenerative disc disease, lumbar facet arthropathy, lumbar

radiculopathy, generalized anxiety disorder, posttraumatic stress disorder ("PTSD"), and major depressive disorder, recurrent, moderate. (AR 19) (emphasis omitted). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. J's ability to perform basic work activities as required by SSR 85-28. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016). The ALJ found that Ms. J had the following non-severe impairments: diabetes mellitus and hyperlipidemia. (AR 19-20). Finally, the ALJ found that any other condition of Ms. J's in the record that the ALJ had not specifically mentioned revealed only a slight abnormality having such minimal effect on Ms. J that it would not be expected to interfere with her functioning and so was non-severe. (AR 20).

The ALJ concluded at Step Three that Ms. J does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.920(d), 416.925 and 416.926). The ALJ considered Listings 11.14, 8.09, 3.02, 3.03, 4.00H, 1.15, 1.16, 12.04, 12.06, 12.15, and SSR 19-2p. (AR 20-

Relevant here, in making this determination, the ALJ consulted the paragraph "B" criteria for mental impairments. (AR 21-23). In support, the ALJ found that Ms. J has moderate limitations in understanding, remembering, or applying information, in interacting with others, and in concentrating, persisting, or maintaining pace. (AR 22).

The ALJ found that Ms. J has a mild limitation in the ability to adapt or manage herself. (AR 22). The ALJ determined that because Ms. J's mental impairments did not cause at least two marked limitations or one extreme limitation, the paragraph "B" criteria was not satisfied[4]. (AR 22). Further, the ALJ determined that the medical record did not support a finding that Ms. J has achieved only a marginal adjustment as understood by Listing 12.00(G)(2)(c). (AR 22-23).

Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. J can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 416.945(a)(2). The RFC is the most that an individual can do despite her limitations. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 416.929; SSR 16-3p. Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 416.967(b). The ALJ concluded that Ms. J retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. 416.967(b). The ALJ determined that Ms. J could:

> perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds and can

---

[4] *See* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited March 16, 2026).

> occasionally balance, stoop, kneel, crouch, and crawl. She can tolerate frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. She can understand, remember, and carry out simple instructions and can tolerate frequent exposure to coworkers, supervisors, and the public.

(AR 23) (emphasis omitted). Because Ms. J had no past relevant work, the ALJ appropriately skipped Step Four. 20 C.F.R §§ 416.960; 416.920(h). Accordingly, the ALJ moved on to last step in the five-step sequential analysis and applied her RFC assessment in order to determine whether Ms. J could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that Ms. J retained the RFC to perform the representative jobs of housekeeping cleaner (approximately 260,000 jobs nationally), marker (approximately 223,000 jobs nationally), and inspector and hand packager (approximately 60,600 jobs nationally). (AR 29).

Finding that Ms. J could make an adjustment to work that existed in significant numbers in the national economy, the ALJ determined that Ms. J was not disabled since April 28, 2022, through the date of the ALJ's decision. (AR 29).

### B. Issues for Review

On review, Ms. J challenges the ALJ's RFC assessment in determining that Ms. J could tolerate frequent exposure to coworkers, supervisors, and the public when the ALJ also earlier found that Ms. J has moderate limitations in social functioning. Second,

Ms. J argues that the ALJ improperly considered her activities of daily living as supporting her ability to respond to workplace stress. Finally, Ms. J argues that the ALJ improperly applied SSR 16-3p in assessing her symptoms.

### 1.  The ALJ's Determination of Ms. J's Social Functioning

Ms. J takes issue with what she argues is the ALJ's failure to incorporate a moderate limitation that she found in Step Three into her RFC. Specifically, Ms. J argues that even though the ALJ found that she has moderate limitations in interacting with others, the ALJ then improperly determined that Ms. J "can tolerate frequent exposure to coworkers, supervisors, and the public" in her RFC, which justifies remand.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d at 1000. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. Jan. 26, 2009) (citing SSR 96–8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)).

In social security cases, mental impairments are ranked on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4)[5]. A "moderate limitation" is defined by regulation to

---

[5] The Social Security Administration defines these terms as follows:

a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

mean that functioning in that area is "fair." *Pavlicek v. Saul*, 94 F. 3d 777, 783 (7th Cir. 2021) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1).  Relevant here, a moderate limitation in social functioning "may seriously undermine a claimant's ability to work." *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) (citing 20 C.F.R § 404.1545(c); SSR 85-15). An ALJ can account for a limitation of this kind by restricting the frequency with which the claimant encounters it. SSA regulations provide that an ALJ can restrict a claimant to never encountering the condition; occasionally encountering it, meaning up to one-third of the time; frequently encountering it, meaning between one-third to two-thirds of the time; or constantly encountering it, meaning two-thirds or more of the time. *See Carson v. Barnhart*, 140 F. App'x 29, 37 (10th Cir. 2005); SSR 83-10, 1983 WL 31251, at *5-6. Here, the ALJ concluded that Plaintiff suffers from a "moderate" limitation in social interaction, meaning that her ability to engage in social interaction "is fair," which is somewhere in between "slightly limited" and "seriously limited." 20 C.F.R. §. 404, Subpt. P, App'x 1, § 12.00(F)(2).  Here, the ALJ also restricted Plaintiff to "frequent" social interaction, meaning she could engage in social interaction one- to two-thirds of the time while working.

---

c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. §. 404, Subpt. P, App'x 1, § 12.00(F)(2).

In assessing the paragraph "B" criteria in Step Three, the ALJ found that Ms. J has a moderate limitation in interacting with others, based on several supporting factors, including the psychological consultative opinion of Dr. Coulter-Kern. (AR 22). The ALJ credited Dr. Coulter-Kern's opinion that Ms. J "would have moderate difficulty in responding appropriately to supervision and coworkers in a work setting." (AR 22; 365). Further, the ALJ also considered Ms. J's hearing testimony and her treatment notes from other providers. The ALJ noted that, based on Ms. J's hearing testimony, Ms. J could go out alone and shop in stores, although she did not like doing so. (AR 22; 47-48). The ALJ also noted that her providers described her as calm, cooperative, and pleasant. (AR 22 *citing to* AR 333; 460). Considering all of these factors, the ALJ determined that Ms. J had "no more than moderate limitations in interacting with others." (AR 22).

The Commissioner argues that the ALJ reasonably considered the evidence before her and formulated an RFC supported by substantial evidence. The Commissioner also argues that Ms. J's challenge to the ALJ's RFC determination is an improper attempt to have the Court reweigh evidence that the ALJ already considered. The Court is prohibited from substituting its own judgment for that of the Commissioner, which means that it cannot "reweigh evidence, resolve conflicts in the record," or "decide questions of credibility." *Young*, 362 F. 3d at 1001. The Commissioner points out that under the revised regulations, a moderate limitation is interpreted to mean that the individual's ability to function "independently, appropriately, effectively, and on a sustained basis" in an area is "fair." 20 C.F.R. Pt.

11

404, Subpt. P, App'x 1, § 12.00(F)(2)(c). Then, the Commissioner argues that the ALJ's RFC limitation falls within this definition of a moderate limitation. On the issue of social functioning, the Commissioner argues that the analysis the ALJ provided shows why she did not credit the psychological consultative opinion of Dr. Coulter-Kern.

Here, the ALJ's decision to accept Dr. Coulter-Kern's opinion as to Ms. J having a moderate difficulty in social functioning in Step Three did not conflict with the RFC that Ms. J could tolerate frequent social interaction. That is because "frequently" is defined by SSA regulations to mean "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5-6. And restricting a claimant to exposure to the condition only one- to two-thirds of the time is an appreciable limitation—a reduction in exposure of 33% to 66% compared to a non-limited individual—which is sufficient to account for a "fair" limitation. 20 C.F.R. §. 404, Subpt. P, App'x 1, § 12.00(F)(2)(c). Accordingly, the ALJ's RFC restricting Ms. J to frequent social interaction adequately accounted for her moderate limitation in this area.

### 2. Ms. J's Ability to Handle Workplace Stress

Ms. J argues that the ALJ erroneously discounted Dr. Coulter-Kern's opinion that Ms. J would have moderate to severe difficulty coping appropriately to work pressures. Ms. J argues that Dr. Coulter-Kern's opinion corroborated her testimony regarding her ability to perform activities of daily living. Ms. J further contends that the ALJ failed to elaborate how her ability to perform activities of daily living, managing finances, going out alone, and managing medical care, was relevant to her ability to respond to workplace stress. The Commissioner argues in response that Ms. J only offers general

statements that one's ability to handle workplace stress is an individualized inquiry. The Commissioner argues that Ms. J fails to point out how the ALJ failed to conduct such an inquiry in this circumstance.

As Ms. J notes, critical differences exist between performing activities of daily living and working a full-time job. For instance, when performing activities of daily living, individuals have more flexibility and can secure assistance from others to complete their intended tasks unlike when they work full-time and must meet a minimum standard of performance. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). As a result, courts have cautioned against an exaggerated reliance on the ability to perform daily activities, but still find information about daily activities relevant in evaluating conflicting evidence about a claimant's limitations. *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021) (citing *Bjornson*, 671 F.3d at 647 (collecting cases)).

As to this, the Commissioner contends that, even if the ALJ failed to properly consider her daily activities, this alone does not warrant remand. "Not all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (emphasis in original); *Sanders v. Astrue*, 894 F. Supp. 2d 1100, 1112 (N.D. Ind. Sept. 6, 2012) (the ALJ gave other sound reasons for finding the claimant not entirely credible such that error related to treatment gaps was harmless).

Here, the ALJ did consider Ms. J's statements about her limited daily living activities. (AR 24).

At several points in her opinion, the ALJ outlined Ms. J's activities, noting that Ms. J managed her own finances, could go out alone, and managed her own medical

13

care. (AR 27). And although the ALJ did not specifically state that Ms. J's daily activities were limited or done with qualification, the ALJ discussed these activities in the context of Ms. J's qualifications. Further, the ALJ gave sound reasons as to why she did not find Ms. J's allegations entirely credible, and described how she weighted Ms. J's subjective reports, including limitations to her ability to stand and walk, her use of a cane, and her frequent crying alongside objective evidence. (AR 23). The ALJ noted that Ms. J testified that she could prepare simple meals and do light household chores. (AR 24; 49-50). Ms. J testified that she could do at least one household chore on a daily basis, but that she would take breaks. (AR 47). Further, the ALJ also discussed that Ms. J could shop in stores and independently managed her own finances. (AR 24).

The ALJ also provided appropriate reasons for discounting Dr. Coulter-Kern's opinion that Ms. J would have moderate to severe difficulty coping appropriately to work pressures based on Ms. J's subjective symptoms. Without more, the Court cannot find remand appropriate on this basis. *See Walcott v. Berryhill*, No. 1:18-CV-988-JPH-MPB, 2019 WL 2494165, at *8 (S.D. Ind. Feb. 5, 2019) ("Even if this court were to hold that the ALJ should have expressly addressed Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting Plaintiff's subjective complaints."); *see also Thomas S. v. Kijakazi*, No. 1:22-cv-270, 2023 WL 2783196, at *6 (N.D. Ind. Apr. 5, 2023).

### 3. The ALJ's Application of SSR 16-3p

14

Finally, Ms. J argues that the ALJ's evaluation of her impairments violated SSR 16-3p. At Step 1, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce her alleged symptoms. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2026), at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.921. In determining whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms, the ALJ does not consider whether the severity of the claimant's alleged symptoms is supported by the objective medical evidence. SR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017). At Step 2, after the ALJ establishes that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ evaluates the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.*; *see also* 20 C.F.R. § 416.929(a).

This analysis must focus on "the extent to which the symptoms reduce the individual's capacity to perform work-related activities." *Wade v. Berryhill*, No. 2:17-CV-278, 2018 WL 4793133, at *10 (N.D. Ind. Oct. 4, 2018) (citing SSR 16-3p). The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . ." 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish her capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. §

404.1529(c)(4). So long as the ALJ gives specific reasons supported by the record, the

Court will not overturn this determination unless it is "patently wrong." *See Deborah M.*

*v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The factors considered relevant to subjective

symptoms are:

(i)      [The claimant's] daily activities;

(ii)      The location, duration, frequency, and intensity of [the claimant's] pain  or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [her] pain or other symptoms;

(vi)    Any measures [claimant] use[s] or ha[s] used to relieve [her] pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, Ms. J argues that the ALJ's evaluation of her subjective symptoms was not

grounded in substantial evidence. Ms. J argues that the ALJ ignored her testimony that

indicated that she performed her daily activities with significant limitations, such as

with help or breaks to rest. (AR 47-48) Specifically, Ms. J points to her testimony that

she needs a lot of help from people. (AR 44; 47; 247). Ms. J also testified to her ability to

walk less than half a block before needing to sit for rest unaided, and with pain based

on her weight and arthritis. (AR 45). Ms. J argues that the ALJ discounted her testimony based on the objective tests, without sufficient elaboration as to why.

The Commissioner argues that the ALJ reasonably articulated and considered the evidence before her as applied to the factors found in SSR 16-3p. The ALJ is not required to recite her findings on every factor, so long as it is evident that she sufficiently considered Ms. J's reports and demonstrated her reasoning in finding that they were not wholly reliable. *Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013); *see also Tillet v. Colvin*, No. 1:13-cv-1775, 2015 WL 926178, at *5 (S.D. Ind. Mar. 3, 2015). The Commissioner points to where the ALJ considered these factors in her analysis, for example: (1) Ms. J's activities of daily living (AR 24); (2) her subjective statements (AR 22-24); (3) objective medical evidence, including physical and mental examination findings, imaging studies, and test results (AR 24-26); (4) Ms. J's treatment history, including the absence of emergency care and management of her conditions through medication (AR 25); and (5) medical opinions (AR 22, 27-28). The Commissioner contends that the ALJ did not ignore Ms. J's limitations and need to take breaks when performing her daily activities (AR 23). The Commissioner also points to the limitations that the ALJ acknowledged: Ms. J's testimony of being able only to walk less than half a block unassisted prior to requiring a break; that Ms. J could not sit longer than five minutes before needing to change positions; that she needed to lean on something when standing due to her lower back and right hip pain; and her use of a cane. (AR 24). As the Commissioner notes, the ALJ then contrasted Ms. J's testimony with numerous benign examination results, including: a normal gait; ability to walk on heels and toes;

17

negative straight leg raises; and ability to get on and off the exam table unassisted. (AR 25-28).

Finally, Ms. J argues that the ALJ improperly discredited her testimony based on her smoking. An ALJ errs if she credits a claimant's failure to quit smoking "as evidence of noncompliance and as a basis to find her incredible." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). Given the addictive nature of smoking, "it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful." *Id.*

The Commissioner argues that the ALJ discussed Ms. J's smoking as one of several pieces of key evidence when evaluating the severity of her asthma. Ms. J's smoking was considered in conjunction with Ms. J's use of Symbicort, an Albuterol inhaler, and that Ms. J never required emergency care because of her asthma. (AR 25). Here, the ALJ considered Ms. J's smoking within the context of limiting exposure to pulmonary irritants so as to not exacerbate her asthma. (AR 25, 26). The ALJ discussed Ms. J's smoking in the context of her asthma and not to discount her subjective symptoms. (*See* AR 25).

The Court agrees with the Commissioner that the ALJ adequately discussed Ms. J's testimony and treatment history in finding that Ms. J's statements about her symptoms were inconsistent with the evidence and lacked sufficient support. 20 C.F.R. § 416.929(a). It is not proper for this Court to reweigh the evidence that the ALJ considered. Therefore, without more, the Court cannot find that her determination was "patently wrong." *Deborah M.*, 994 F.3d at 789.

## IV.    CONCLUSION

For these reasons, the ALJ's decision to deny Ms. J's applications is supported by substantial evidence. The role of this Court is not to reweigh the evidence on which the ALJ based her conclusion, but rather to determine whether the ALJ relied on the correct legal standards and whether her conclusion is supported by substantial evidence. Based on the record, including the transcript of Ms. J's testimony, and the detailed order written by the ALJ supporting her conclusion, the decision of the ALJ denying Ms. J's application for SSI is **AFFIRMED.**

**SO ORDERED** this 27th day of March 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge